UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

LAMONT C. CHERRY,

                                   Plaintiff,

              -against-

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/22/2019

17-CV-7999 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Lamont Cherry, proceeding *pro se*, brought this action seeking review of the denial of his application for Social Security benefits, pursuant to 42 U.S.C. §§ 1381–1385. *See* Compl., Dkt. 2. The Commissioner of Social Security (the "Commissioner") has moved for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). *See* Notice of Mot., Dkt. 15. On November 16, 2018, Magistrate Judge Kevin Fox entered a Report and Recommendation ("R&R") recommending that the Commissioner's motion be denied and that the case be remanded to the Commissioner for reconsideration of Plaintiff's application. *See* R&R, Dkt. 24. The Commissioner objected to the R&R, and Plaintiff responded to the Commissioner's objections. *See* Defs.' Second Mem. of Law, Dkt. 28; Pl.'s Second Mem. of Law, Dkt. 31. For the following reasons, the Commissioner's objections to the R&R are SUSTAINED. The R&R is NOT ADOPTED. The Commissioner's motion for judgment on the pleadings is GRANTED. This case is DISMISSED.

## I.       Legal Standards

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections to the R&R are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). When reviewing the submissions of a *pro se* litigant, the submissions must be "construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2008)).

A district court must affirm the Commissioner's decision to deny benefits unless the decision is "based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (per curiam); *see also* 42 U.S.C. § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Greek*, 802 F.3d at 375 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). The "substantial evidence" standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012)(citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). The standard means that "once an ALJ finds facts, [a court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Id.* (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)); *see also Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

To be "disabled," a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant will be found to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner must follow a five-step analysis to evaluate disability claims:

> *First*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. If so, the claimant is not disabled. *Second*, if the claimant is not working, the Commissioner must determine whether the claimant has a "severe" impairment, *i.e.*, an impairment that limits his ability to do physical or mental work-related activities. If not, the claimant is not disabled. *Third*, if there is a severe impairment, the Commissioner determines if the impairment meets or equals the criteria of a *per se* disabling impairment contained in Appendix 1 to 20 C.F.R. Part 404, Subpart P (Listings of Impairment). If the claimant's impairment does not meet or equal a listed impairment, before proceeding to step four, the Commissioner determines, based on all the relevant medical and other evidence of record, the claimant's "residual functional capacity," ["RFC"] which is what the claimant can still do despite the limitations imposed by his impairment. *Fourth*, the Commissioner considers whether the claimant's residual functional capacity permits him to return to his past relevant work. If so, the claimant is not disabled. *Fifth*, if the claimant cannot return to his past work, the Commissioner considers, based on the claimant's residual functional capacity and vocational factors, whether the claimant can do other work existing in significant numbers in the national economy. If so, the claimant is not disabled.

*Greek*, 802 F.3d at 373 n.2 (citations omitted) (emphasis added); *see also Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013). "The claimant bears the burden of proof in the first four steps

of the sequential inquiry; the Commissioner bears the burden in the last." *Selian*, 708 F.3d at

418; *see also Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

## II.    Background

Plaintiff applied for benefits on April 29, 2014, asserting that he was disabled due to an

injury to his left ankle and psychological issues. *See* R. 184; *see also id.* at 158–65, 179–99.[1]

Plaintiff's application was initially denied on June 23, 2014. *See id.* at 10, 72–75. Plaintiff

subsequently requested a hearing by an administrative law judge ("ALJ") to review the denial.

*See id.* at 76–82.

An ALJ held a hearing on June 14, 2016. *See id.* at 25–42. Plaintiff, who was then

represented by counsel but also incarcerated, and Plaintiff's attorney both attended the hearing

by telephone. *See id.* at 27. Plaintiff and a vocational expert ("VE") testified. *See id.* at 29–42.

Plaintiff testified that he was disabled due to his left-ankle injury, limitations in the movement of

his right shoulder, anxiety attacks, and bipolar disorder.[2] *See id.* at 30. In addition to taking

testimony, the ALJ also reviewed Plaintiff's medical records and opinions from several of

Plaintiff's health care providers. *See id.* at 10, 13–18.

In a written decision entered September 2, 2016, the ALJ found that Plaintiff was not

disabled and affirmed the denial of Plaintiff's application. *See id.* at 10–20. At the first step of

the five-step analysis, the ALJ found that Plaintiff had not engaged in any substantial gainful

activity since the application date. *See id.* at 12. At the second step, the ALJ found that

---

[1]    "R." refers to pages of the certified administrative record that the Commissioner filed on January 17, 2018 (Dkt. 11).

[2]    Plaintiff had not raised his shoulder condition in his initial application. *See* R. 184, 195–96.

Plaintiff's psychological issues did not constitute a "severe impairment" under the Social

Security laws, *see id.* at 13–15; the ALJ found, however, that Plaintiff's ankle and shoulder

conditions, combined with Plaintiff's obesity, constituted a "severe" impairment, *see id.* at 12.[3]

At the third step, the ALJ found that Plaintiff's impairments were not *per se* disabling under the

law. *See id.* at 15. The ALJ then found that, notwithstanding these impairments, Plaintiff had

the RFC to perform "light work" with "frequent" bending, stooping, reaching, handling, and

fingering.[4] *See id.* at 16–18. Proceeding to Step Four, the ALJ found that Plaintiff had no past

relevant work. *See id.* at 18. And at Step Five, the ALJ found that Plaintiff was able to perform

work that existed in significant numbers in the national economy and, therefore, that Plaintiff

was not "disabled" within the meaning of the Social Security laws. *See id.* at 18–19.

Accordingly, the ALJ affirmed the denial of Plaintiff's claim. *See id.* at 19–20.

Plaintiff petitioned the Social Security Agency's ("SSA") Appeals Council for review of

the ALJ's decision; the Appeals Council denied Plaintiff's request on September 25, 2017. *See*

*id.* at 1–6, 157. On October 17, 2017, Plaintiff, proceeding *pro se*, filed the Complaint, seeking

---

[3]      The ALJ also noted that Plaintiff had been diagnosed with hyperlipidemia, hypertension, and asthma but
found that these conditions were not "severe" impairments. R. 13.

[4]      A "frequent" movement is one that is performed more often than an "occasional" movement but less often
than a "continuous" movement. *See Castle v. Comm'r of Soc. Sec.*, No. 1:13-CV-543, 2014 WL 2215759, at *2 &
n.6 (N.D.N.Y. May 29, 2014) (citing SSR 83–10, 1983 WL 31251, at *5–6 (1983)). A person can perform a
movement "frequently" if he can perform it "from one-third to two-thirds of the time." *Id.* at n.6.

         "Light work" involves lifting no more than 20 pounds, with frequent lifting or carrying of objects weighing
up to 10 pounds, and either non-continuous walking or standing for approximately six hours in an eight-hour
workday or sitting most of the time with some pushing and pulling of leg or arm controls. *See Mezzacappa v.
Astrue*, 749 F. Supp. 2d 192, 206 n.12 (S.D.N.Y. 2010) (citing 20 C.F.R. § 404.1567(a)–(b)). "Light work" is
distinguishable from "sedentary work," which involves lifting no more than ten pounds and only "occasional"
walking and standing. *See id.* If a person can perform light work, he can also perform sedentary work, unless the
person has additional limiting factors. *See id.*

review of the agency's decision. *See* Compl. The Commissioner subsequently moved for judgment on the pleadings. *See* Notice of Mot.

On November 16, 2018, the Magistrate Judge issued the R&R recommending that the Commissioner's motion be denied. *See* R&R. The R&R concluded that the ALJ's determination of Plaintiff's RFC was "not supported by substantial evidence" and was contradicted by a medical opinion on which the ALJ purported to rely. *Id.* at 11–12. The R&R also found that the ALJ erred in concluding that Plaintiff was capable of performing a significant number of jobs in the national economy. *See id.* at 12–13. In addition, the R&R found that technical problems relating to Plaintiff's telephone connection during the administrative hearing made judicial review of the hearing unduly "difficult," warranting remand. *Id.* at 13–14. Accordingly, the R&R recommended that the Commissioner's motion be denied and that this case be remanded back to the Commissioner for further proceedings. *See id.* at 15.

The Commissioner objected to the R&R, *see* Def.'s Second Mem. of Law, and Plaintiff responded to those objections, *see* Pl.'s Second Mem. of Law.

## III. The ALJ's RFC Determination Was Supported by Substantial Evidence

The ALJ found that Plaintiff had the RFC to perform "light work" with "frequent" bending, stooping, reaching, handling, and fingering. R. 16–18. The Magistrate Judge concluded that this finding was not supported by substantial evidence. *See* R&R at 11–12. The Commissioner objects to the Magistrate Judge's conclusion. *See* Def.'s Second Mem. of Law at 10–14.

### A. The Applicable Law

An ALJ's RFC determination need not "perfectly correspond with" any single medical

6

opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.* "Genuine conflicts in the medical evidence are for the [ALJ] to resolve" in the first instance. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

### B.      The ALJ's Factual Findings

In making his RFC finding, the ALJ relied in large part on the medical opinion of Dr. Chaim Shtock, a consultative examiner. *See* R. 17–18; *see also* R. 239–42. After conducting a physical examination of Plaintiff, Dr. Shtock opined that Plaintiff had no limitations with "heavy lifting," "kneeling," "crouching," "sitting long periods, "frequent bending," "performing overhead activities using both arms," or "using both hands for fine and gross manual activities." R. 241. Dr. Shtock opined that Plaintiff had a "moderate limitation" with "squatting," "frequent stair climbing," and "walking long distances." *Id.* He also opined that Plaintiff had a "mild to moderate limitation with standing long periods." *Id.* Dr. Shtock stated that, other than the impairments discussed, Plaintiff had "no other physical functional deficits." *Id.*[5]

As to Plaintiff's left ankle condition, Dr. Shtock observed that Plaintiff walked with a "limping gait," was "unable to walk on his toes," and had "difficulty walking on his heels." *Id.* at 240. Dr. Shtock also noted, however, that Plaintiff did not use an assistive device to walk, was able to get onto and off of the exam table without assistance, and complained that he experienced

---

[5]      The ALJ stated that some of Dr. Shtock's descriptions were "vague and conclusory," such as Dr. Shtock's use of the terms "moderate" and "mild." R. 18. The ALJ correctly recognized, however, that Dr. Shtock's use of these terms was accompanied by specific medical findings from Plaintiff's physical examination and that Dr. Shtock's opinion was consistent with the treatment notes of Plaintiff's treating physicians. *See id.* Dr. Shtock's opinion, therefore, was not "so vague as to render it useless" in evaluating Plaintiff's condition. *Curry v. Apfel*, 209 F.3d 117, 123–24 (2d Cir. 2000).

"aggravated" ankle pain only after "prolonged" periods of walking or standing. *Id.* at 239–40.

Dr. Shtock observed that Plaintiff's range of motion in his left ankle was somewhat limited and that his muscle strength in the ankle was "4+/5" (rather than a full "5/5"). *Id.* at 241. Dr. Shtock found that, apart from Plaintiff's left ankle, Plaintiff had full muscle strength in all "bilateral lower extremities." *Id.* at 241.

The ALJ found that Dr. Shtock's opinion about Plaintiff's ankle was consistent with the treatment notes of Plaintiff's treating physicians. *See id.* at 18. Dr. Shotck's observations regarding the ankle's range of motion, for example, were similar to the range of motion recorded by Plaintiff's treating physicians. *See id.* at 241; *see also id.* at 233, 308, 310, 314. These physicians diagnosed Plaintiff with chronic tendinitis. *See id.* at 308, 311. Plaintiff also reported to his treating physicians that he exercised vigorously, *see, e.g.*, *id.* at 260, and he complained of being unable to walk or stand only after a prolonged period of time, *see id.* at 192, 195–96, 239, 313—lending support to Dr. Shtock's view that Plaintiff's ankle posed only a "moderate" limitation and that Plaintiff's impairments were limited to "walking *long* distances," "standing *long* periods," and "*frequent* stair climbing," *see id.* at 241 (emphasis added).

Additionally, the ALJ noted that Plaintiff had reported to his doctors that medication and physical therapy reduced his ankle pain considerably (from an "eight out of ten" to a "five out of ten"), *see id.* at 17; *see also id.* at 199, 239, 300–05, 311, 315–16, 319, but that Plaintiff had stopped attending physical therapy and had not attended a prescribed follow-up appointment with an orthopedist, *see id.* at 17. In the ALJ's view, Plaintiff's failure to follow up with these appointments indicated that "there had been medical improvement" in Plaintiff's ankle condition and that Plaintiff had "found further treatment unnecessary." *Id.* at 17.

As to Plaintiff's shoulder condition, Dr. Shtock did not observe any limitations. *See id.* at 240 (recording a full range of motion in Plaintiff's shoulders), 241 (opining that Plaintiff had "no limitations" with "heavy lifting" or with "performing overhead activities using both arms"). The ALJ also noted that an X-ray of the shoulder showed no abnormalities or injuries, *see id.* at 17, 234; that Plaintiff reported having at least some range of motion in his shoulder, *see id.* at 16, 32–33, 36–37; and that Plaintiff complained only of "moderate discomfort" in the shoulder, *see, e.g.*, *id.* at 17, 294. The record also makes clear that the pain in Plaintiff's shoulder was, at worst, intermittent, *see id.* at 36–37, 292; that medication reduced the pain, *see id.* at 284, 292, 295; and that Plaintiff did not require physical therapy or other extensive treatment for the shoulder. Nevertheless, the ALJ credited Plaintiff's testimony that he had difficulty lifting heavy objects due to the shoulder pain. *See id.* at 17, 32–33, 36–37.

Finally, the ALJ observed that Plaintiff is obese, a condition that the ALJ believed could exacerbate Plaintiff's ankle- and shoulder-related limitations. *See id.* at 17–18.

## C.      The ALJ's RFC Determination

The ALJ concluded that Plaintiff was capable of performing "light work" with "frequent" bending, stooping, reaching, handling, and fingering. *Id.* at 18. This conclusion was supported by substantial evidence.

### 1.      Plaintiff's Ankle Condition

Although "light work" requires walking or standing for up to three-quarters of a workday, it requires that a person be capable of performing these activities only "intermittently." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam); *see also* 20 C.F.R. § 416.967(b); SSR 83-10, 1983 WL 31251, at *5–6 (S.S.A. 1983) ("[T]he full range of light work requires standing

or walking, *off and on*, for a total of approximately 6 hours of an 8-hour workday. Sitting may

occur intermittently during the remaining time." (emphasis added)). There is substantial

evidence that Plaintiff was able to perform this level of work, as he reported to his physicians

that he was unable to walk and stand only after prolonged periods of time, *see id.* at 192, 195–96,

239, 313, and, consistent with these reports, Dr. Shtock found that Plaintiff had limitations only

with "standing long periods" and "walking long distances," *id.* at 241.

Although Plaintiff reported "sharp" pain in his ankle, *id.* at 33, the ALJ reasonably found

that Plaintiff's "statements concerning the intensity, persistence, and limiting effects" of that pain

were exaggerated, given that his medical records did not reflect the same level of pain, that

Dr. Shtock opined that Plaintiff had only moderate limitations in this area, and that Plaintiff had

stopped attending physical therapy sessions that had helped reduce his pain. *Id.* at 16–17; *see*

*also Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) ("[W]hile an ALJ 'is required to take

the claimant's reports of pain and other limitations into account,' he or she is 'not require[d] to

accept the claimant's subjective complaints without question.'" (citations omitted) (quoting 20

C.F.R. § 416.929 and *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010))); *Mancuso v. Astrue*, 361

F. App'x 176, 178–79 (2d Cir. 2010).

Additionally, although Plaintiff testified that he needed to elevate his ankle periodically

while sitting, *see* R. 35–36, this testimony did not require a different RFC determination.

Contrary to Plaintiff's testimony, Dr. Shtock found that Plaintiff had "no limitation with sitting

long periods," *id.* at 241, and Plaintiff had not explained the need for ankle elevation while

sitting prior to the ALJ's hearing, *see, e.g.*, *id.* at 196, 232, 313. The VE also testified that a

person could elevate his leg up to 12 inches without it interfering with his ability to perform sedentary work, *see id.* at 41.

### 2. Plaintiff's Shoulder Condition

Light work requires the ability to lift up to 20 pounds at a time, *see* 20 C.F.R. § 416.967(b); there was substantial evidence that Plaintiff was capable of performing such work. Dr. Shtock found that Plaintiff had a full range of motion in his shoulders and that Plaintiff had "no limitation" with "heavy lifting" or with "performing overhead activities." R. 241. Plaintiff also did not require extensive treatment for the shoulder, and an X-ray revealed no abnormalities or injuries. *See id.* at 234. Indeed, Plaintiff did not even raise his shoulder condition in his initial disability application, *see id.* at 184, 195–96; he complained of it only during the hearing with the ALJ and intermittently with his doctors, *see id.* at 32. Accordingly, there was more than substantial evidence that Plaintiff was capable of lifting up to 20 pounds.[6]

The ALJ's finding that Plaintiff was capable of performing frequent bending, stooping, reaching, handling, and fingering, *id.* at 18, was also supported by substantial evidence. Although Plaintiff testified about his shoulder pain, *see id.* at 32, Dr. Shtock opined that Plaintiff had a full range of motion in his elbows, forearms, wrists, and fingers, *see id.* at 240. Dr. Shtock also observed that Plaintiff had full grip strength in both hands; that Plaintiff had no limitations with heavy lifting, kneeling, crouching, bending, or with "fine and gross manual activities"; and that Plaintiff had no "physical functional deficits," other than those relating to his ankle. *Id.* at

---

[6]     The Court also notes that 20 pounds is the absolute *maximum* weight that a person must be able to carry in order to be capable of "light work." 20 C.F.R. § 404.1567(b); *Mezzacappa*, 749 F. Supp. 2d at 207. More commonly, light work requires carrying objects of 10 pounds or less. *See id.* "Medium work," by contrast, requires carrying a maximum of 50 pounds at a time and frequent carrying of objects weighing 25 pounds or less. *See* 20 C.F.R. § 404.1567(c).

240–41.  Further, as discussed, Plaintiff's treatment notes reflect, at best, a mild and intermittent shoulder condition that was responsive to medication and that did not require extensive treatment.  There is no evidence in the record that Plaintiff had any other difficulty using his arms, hands, or fingers.  Accordingly, the ALJ's finding was supported by substantial evidence.[7]

### 3.      Conclusion

Taking a step back from the applicable legal standard, and applying a dose of common sense, Plaintiff is clearly not entitled to Social Security benefits.  He is a 40-year-old man with, at worst, tendonitis, a mild shoulder strain, and no other physical impairments.  Even if this Court were not obligated to defer to the ALJ's decision—which it is—no reasonable person could find that Plaintiff is so impaired that he is unable to work in any jobs that exist in the national economy.  *See* 42 U.S.C. § 1382c(a)(3)(A)–(B).

For all these reasons, the ALJ's RFC determination was supported by substantial evidence.  To the extent that the Commissioner objects to the R&R on this ground, the objection is sustained.

### D.      The R&R's Other Conclusions

The Commissioner objects to two other portions of the R&R.  First, the R&R asserted, without explanation, that the ALJ's finding that Plaintiff was capable of performing frequent reaching and handling was "not based on or consistent with" Dr. Shtock's opinion.  R&R at 12. The Commissioner's objection to this assertion is sustained.  As discussed, Dr. Shtock found no

---

[7]      To be clear, the Court is unaware of any evidence in the record that indicates that Plaintiff was able to bend, stoop, and finger only "frequently," as opposed to "continuously."  Nevertheless, inasmuch as the ALJ limited Plaintiff's capabilities to "frequent" bending, stooping, and fingering, that limitation benefited Plaintiff's application for benefits and, thus, does not warrant remand.

limitations with respect to Plaintiff's ability to perform "overhead activities" or "fine and gross manual activities." R. 241. Put in the terms of the Social Security regulations, Dr. Shtock's finding constituted his opinion that Plaintiff had no limitations with "reaching" or "handling." *See Johnson v. Berryhill*, No. 3:16-CV-01050, 2017 WL 2381272, at *12 (D. Conn. June 1, 2017) (under the Social Security regulations, "fine and gross hand manipulation" involves "reaching," "handling," and "fingering"). Nevertheless, in light of Plaintiff's testimony regarding his shoulder pain and Plaintiff's intermittent complaints to his treating physicians about shoulder pain, the ALJ reasonably concluded that Plaintiff had some limitations with reaching and handling (specifically, that Plaintiff was limited to "frequent," as opposed to "continuous," reaching and handling). *See* R. 17. The ALJ was entitled to credit Plaintiff's testimony notwithstanding Dr. Shtock's contrary finding that Plaintiff had no limitations. *See Matta*, 508 F. App'x at 56 (an ALJ's findings need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision"); *Genier*, 606 F.3d at 49 (an ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record"). In any event, to the extent that the ALJ deviated from Dr. Shtock's opinion regarding limitations on Plaintiff's ability to reach and handle, the ALJ's findings were *more* favorable to Plaintiff than Dr. Shtock's; Plaintiff, therefore, has no basis to complain about the ALJ's conclusion. For all these reasons, the Commissioner's objection is sustained.

The R&R also asserted that the ALJ's finding regarding Plaintiff's ability to perform frequent reaching and handling is inconsistent with the ALJ's statement that Plaintiff's conditions were "likely to . . . limit his ability to perform reaching/handling between one third

and two thirds of the time during a typical workday (*i.e.*, 'frequently')." R&R at 11–12 (quoting R. 17). The Commissioner objects to that assertion, *see* Def.'s Second Mem. of Law at 13–14; the objection is sustained. As discussed, the Social Security regulations define "frequently" as "occurring [between] one-third to two-thirds" of a workday. SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983); *see also Stottlar v. Colvin*, No. 5:13-CV-00047, 2014 WL 3956628, at *15 (N.D.N.Y. Aug. 13, 2014). Read in context, the ALJ's statement that Plaintiff's conditions would "limit his ability to perform reaching/handling between one third and two thirds of the time during a typical workday" was clearly a typo: the statement should have said that Plaintiff was limited to "perform[ing] reaching/handling *to* between one third and two thirds of the time during a typical workday." R. 17. Indeed, the ALJ's opinion contained numerous other typos, and there is no other indication that he made contradictory findings in the opinion. Accordingly, the Commissioner's objection to this portion of the R&R is sustained.

Although not addressed in the R&R, Plaintiff objects to the ALJ's RFC determination on the ground that the ALJ did not personally examine Plaintiff or otherwise take steps personally to assess Plaintiff's limitations at the time of the hearing. *See* Pl.'s Second Mem. of Law at 7. Plaintiff asserts that his condition is "getting worse each day," a factor that the ALJ should have taken into account. *Id.* at 8. This objection is meritless. The relevant time period for the Commissioner's assessment was the period between the date of the alleged onset of disability (December 2013, *see* R. 179) and the date of the Commissioner's decision (September 25, 2017, *see id.* at 1–6). *See Collins v. Comm'r of Soc. Sec.*, 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013). Evidence relevant to the Plaintiff's condition after the Commissioner's decision—such as evidence that Plaintiff's condition is currently worsening—warrants a remand only if the

evidence bears upon the "severity and continuity" of impairments that existed during the relevant time period. *See id.* (quoting *Pollard v. Halter*, 377 F.3d 183, 194 (2d Cir. 2004)). Plaintiff has made no such showing. Where, as here, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); *see also* R. 27–28 (Plaintiff's attorney stating that the record of Plaintiff's medical history was complete).

IV.     **The ALJ's Analysis at "Step Five" Was Supported by Substantial Evidence**

At the fifth step of the ALJ's analysis, the ALJ was required to determine whether Plaintiff could, in light of his RFC, perform jobs existing in significant numbers in the national economy. *See Greek*, 802 F.3d at 373 n.2. In the R&R, the Magistrate Judge found that the Commissioner had failed to carry his burden at this step. *See* R&R at 12–13. The Commissioner objects to the Magistrate Judge's conclusion.

A.      **The Applicable Law**

To make his determination at Step Five, the ALJ consulted the Medical-Vocational Guidelines contained in Appendix 2 of 20 C.F.R. Part 404, Subpart P, commonly known as the "grid." *See* R. 19; *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 570–71 (S.D.N.Y. 2009). As one Court in this District has explained:

> The grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the [grid] indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. As a general matter, the result listed in the grid is dispositive on the issue of disability. Exclusive reliance on the grid, however, is inappropriate where the guidelines

15

> fail to describe the full extent of the claimant's physical
> limitations.

*Id.* at 570 (citations and internal quotation marks omitted); *see also Bapp v. Bowen*, 802 F.2d 601, 605–06 (2d Cir. 1986).  Put differently, an ALJ may rely exclusively on the grid to determine whether the claimant can perform a significant number of jobs in the economy—and therefore whether the claimant is "disabled" under the Social Security laws—as long as the claimant does not have any "non-exertional limitations" that "significantly diminish" the range of available work indicated in the grid.  *See Gaiser v. Comm'r of Soc. Sec.*, No. 13-CV-8234, 2015 WL 3536604, at *12 (S.D.N.Y. June 5, 2015); *McDonaugh*, 672 F. Supp. 2d at 571.

If a claimant's non-exertional limitations significantly diminish his range of work, the ALJ may be required to obtain testimony from a VE in order to make the Step Five determination.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).  The ALJ may adduce this testimony through a hypothetical question, as long as the hypothetical is based on substantial evidence and "accurately reflect[s] the limitations and capabilities of the claimant involved."  *Id.* (citations and internal quotation marks omitted).  If the hypothetical question posed to the VE fails to "include or otherwise implicitly account for all of [the claimant's] impairments," then the VE's opinion cannot support the ALJ's conclusions, unless the error is "harmless."  *Johnson*, 2017 WL 2381272, at *12 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)).

An erroneous hypothetical question is harmless only if other "substantial evidence in the record" supports the ALJ's conclusions, *Johnson*, 2017 WL 2381272, at *12, or if "the hypothetical 'otherwise implicitly account[ed] for [the] claimant's limitations,'" *McIntyre*, 758 F.3d at 151 (quoting *Winschel*, 631 F.3d at 1181).

### B. Application to This Case

Here, the ALJ consulted the grid and found that Plaintiff "essentially has the residual functional capacity to perform the full range of light work." R. 19. Put differently, the ALJ found that Plaintiff's non-exertional limitations—those with respect to bending, stooping, reaching, handling, and fingering—did not significantly diminish the range of light work available to Plaintiff in the grid. If this finding was correct, then the ALJ was entitled to conclude, based exclusively on the grid, that Plaintiff was not disabled. *See McDonaugh*, 672 F. Supp. 2d at 571.

The Court need not determine whether this finding was correct, however, because the ALJ consulted a VE in order to be sure to account for Plaintiff's non-exertional limitations. *See* R. 19, 38–41. The ALJ asked the VE whether a person of Plaintiff's age, education, and work experience who was limited to "sedentary work" and to "frequent[]" reaching, handling, and fingering could perform any jobs existing in the national economy. *Id.* at 38. The VE stated that significant numbers of jobs existed in the national economy that such a person could perform, including work as a "table worker," a "touch-up screener," and a "stone setter." *Id.* at 38–39. Based on this testimony, the ALJ concluded that the Commissioner had carried his burden at Step Five and that Plaintiff was not disabled. *See id.* at 19.

The R&R asserts that the ALJ's hypothetical question did not accurately reflect Plaintiff's limitations, inasmuch as the hypothetical did not include Plaintiff's limitations with bending and stooping. *See* R&R at 13. The Commissioner argues that this omission was harmless, *see* Def.'s Second Mem. of Law at 16, and the Court agrees. Limitations on bending and stooping do not, as a matter of law, significantly diminish the range of light work available

to a claimant. *See Felder v. Astrue*, No. 10-CV-5747, 2012 WL 3993594, at *17 (E.D.N.Y. Sept.

11, 2012) ("According to the SSA's rulings, an inability to bend, stoop, crouch, or kneel more

than occasionally would not substantially affect an individual's ability to perform light or

sedentary work." (citing *McDonough*, 672 F. Supp. 2d 571)); *see also* SSR 85-15, 1985 WL

56857, at *2–3 (1985). Because the ALJ was not required to obtain the VE's opinion regarding

Plaintiff's bending and stooping limitations, the ALJ's failure to include these limitations in his

hypothetical question to the VE was harmless.[8]

The R&R also asserts that the question posed to the VE did not accurately reflect

Plaintiff's capabilities, as the question asked for jobs at the "sedentary" exertional level (whereas

Plaintiff was capable of performing work at the more active "light" exertional level). *See* R&R

at 12. The Commissioner argues that this issue does not require remand, *see* Def.'s Second

Mem. of Law at 14–15, and the Court agrees. Under the Social Security regulations, a person

who can do light work can, as a matter of law, also do sedentary work, "unless there are

additional limiting factors such as loss of fine dexterity or inability to sit for long periods of

time." 20 C.F.R. § 416.967(b); *see also Poupore*, 566 F.3d at 305. Accordingly, courts have

repeatedly affirmed the Commissioner's decisions in which a VE hypothetical was phrased in

terms of "sedentary work" even though the ALJ's RFC finding was for "light work." *See* Def.'s

Second Mem. of Law at 15–16 (collecting cases). As the Court has discussed, there was

substantial evidence that Plaintiff did not have "additional limiting factors," as Dr. Shtock and

---

[8]     The R&R asserts that the question of whether bending and stooping limitations require VE testimony
should have been decided by the ALJ in the first instance. *See* R&R at 13. The ALJ, however, did consider this
question in the first instance when he stated that Plaintiff "essentially has the residual functional capacity to perform
the *full range* of light work." R. 19 (emphasis added); *see also id.* at 17 ("[T]he claimant has been *fully capable* of
performing light exertion level work." (emphasis added)).

others found that Plaintiff had no limitations with respect to fingering and the ability to sit for extended periods of time. *See* R. 241. Accordingly, Plaintiff was capable of performing all of the "sedentary" jobs that the VE discussed, and the VE's testimony adequately supported the ALJ's conclusion that Plaintiff was not disabled.

For all these reasons, the ALJ's analysis at "Step Five" was legally correct and was supported by substantial evidence. The Commissioner's objections to this portion of the R&R are sustained.[9]

## V.  Technical Difficulties During the Administrative Hearing Do Not Warrant Remand

In the R&R, the Magistrate Judge found that the ALJ "had significant difficulty hearing and understanding" Plaintiff's testimony during the hearing, making the hearing record "incomplete and deficient" and warranting remand for a new hearing. R&R at 14. Plaintiff raises similar arguments. *See* Pl.'s Second Mem. of Law at 5–6. The Commissioner objects to that portion of the R&R. *See* Def.'s Second Mem. of Law at 17–20.

As an initial matter, Plaintiff consented to conducting the hearing by telephone, *see* R. 28, and at no time did Plaintiff or his attorney object or ask to terminate the hearing due to technical difficulties, *see id.* at 27–41. Additionally, each time the ALJ or Plaintiff had difficulty hearing each other, the information was repeated, and each party indicated that he understood. *See, e.g.*,

---

[9]  The R&R also asserts that the term "frequently" is not defined in the Social Security regulations, making it erroneous for the ALJ to use that term in his hypothetical question to the VE. *See* R&R at 12. That is incorrect. The term "frequently" has been defined in prior Social Security rulings, which are binding on the SSA. *See* Social Security Ruling 83-10, 1983 WL 31251, at *5–6 (S.S.A. 1983) ("'Frequent' means occurring from one-third to two-thirds of the time."); *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990).

Additionally, the R&R asserts that because no substantial evidence supports the finding that Plaintiff can perform frequent reaching and handling, the ALJ erred by including this condition in his hypothetical question. *See* R&R at 12. As the Court has discussed, the R&R's premise is incorrect: there is more than substantial evidence to support that finding.

*id.* at 30–31, 34, 36.  Although a few of Plaintiff's words in the transcript were recorded as inaudible, the ALJ did not ask Plaintiff to repeat himself at those times, suggesting that although the stenographer who transcribed the hearing was unable to make out what was being said, the ALJ was able to hear and understand Plaintiff's answers.  *See, e.g.*, *id.* at 33, 35.  Plaintiff's answers on these points were also clearly reflected in the treatment notes of his physicians and in his application paperwork, which the ALJ reviewed.  Plaintiff also has not articulated what else he would have said or how a better telephonic connection would have made any difference in the outcome of the hearing.  Thus, despite some technical difficulties, Plaintiff received a full and fair hearing before the ALJ.  Under similar circumstances, numerous courts have denied applications for remand.  *See, e.g.*, *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 31–32 (2d Cir. 2013); Def.'s Second Mem. of Law at 19–20 (collecting cases).   Accordingly, the Commissioner's objection to this portion of the R&R is sustained.

## VI.  Substantial Evidence Supported the ALJ's Finding that Plaintiff's Psychological Issues Were Not Severe Impairments

At the second step of the five-step analytical process, the ALJ determined that Plaintiff's psychological issues did not constitute a "severe impairment" within the meaning of the Social Security laws.  *See* R. 12–13.  The Commissioner moved for a judgment on the pleadings on this ground, *see* Def.'s First Mem. of Law, Dkt. 16, at 12–15, but the R&R did not address the issue. The Court finds that the ALJ's conclusion was supported by substantial evidence.

When determining whether a claimant is disabled due to a mental impairment, an ALJ must apply a "'special technique' at the second and third steps of the five-step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  "This technique requires the [ALJ] to determine first whether the claimant has a 'medically determinable mental impairment.'  If the

claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation,'" across "four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Id.* at 265–66 (citations and footnote omitted) (quoting 20 C.F.R. § 404.1520a(b)–(c)). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." *Id.* at 266 (citing 20 C.F.R. § 404.1520a(d)).

The ALJ properly applied this framework. First, the ALJ found that Plaintiff had a medically determinable mental impairment, as Plaintiff had been diagnosed with bipolar disorder. *See* R. 13. This finding was supported by substantial evidence, including Plaintiff's own testimony. *See id.* at 30, 257, 267, 318. The ALJ then rated the degree of Plaintiff's limitation across the four functional areas. *See id.* at 13. As to the activities of daily living, the ALJ found that Plaintiff had "no limitation," *id.* at 13, because Plaintiff had previously reported that he was "able to dress, bathe, and groom, cook, clean, do laundry, shopping, manage his own money, and use public transportation," *id.* at 244; *see also id.* at 192–94, 239. As to Plaintiff's social functioning, the ALJ also found that Plaintiff had "no limitation," *id.* at 13, because Plaintiff stated that he frequently speaks to friends on the phone, plays board games with friends, and visits family, *see id.* at 192, 195, 239, 244.

As to Plaintiff's concentration, persistence, and pace, the ALJ found that Plaintiff had a "mild limitation." *Id.* at 13. This conclusion was supported by substantial evidence. Although Plaintiff told his doctors that he had difficulty concentrating, *see id.* at 246, he also stated that

was generally able to "finish what [he] start[s]," *id.* at 198, and his treating medical professionals observed that he appeared attentive, alert, oriented, and coherent during their examinations, *see id.* at 244, 247, 277–78. Plaintiff also reported that he was able to, and enjoyed, playing the keyboard, reading, writing poetry, and drawing. *See id.* at 194, 244. During a consultative examination, Plaintiff was able to count, count backwards, and conduct "simple calculations," although he was unable to count correctly by multiples of three; accordingly, the consultative examiner rated his attention and concentration as "mildly impaired." R. 244. Based on all of this evidence, the ALJ reasonably concluded that Plaintiff had only "mild" limitations in his concentration, persistence, and pace. *See id.* at 13.

Finally, as to the fourth functional area, the ALJ correctly observed that the record contains no evidence of episodes of decompensation. *Id.* at 13.

Because the ALJ rated the first three functional areas as "mild" or better, and because the ALJ found that Plaintiff had not suffered any episodes of decompensation, the ALJ properly found that Plaintiff's psychological issues did not constitute a severe impairment. *See id.* at 13–14.[10]

---

[10] In making this finding, the ALJ credited the opinion of a consultative examiner, Dr. Toula Georgiou, over the opinion of a nurse practitioner who had treated Plaintiff, Veronica Ogula. *See* R. 13–14. The ALJ reasoned that Georgiou was a doctor of psychology, whereas Ogula was a nurse practitioner with "no special credentials as a mental health provider"; accordingly, the ALJ found that Ogula was not an "acceptable medical source" whose opinions were entitled to controlling weight. *Id.* at 14. This conclusion was proper under the Social Security regulations. *See* SSR 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) (nurse practitioners are not "acceptable medical sources" whose opinions are "entitled to controlling weight" in the ALJ's analysis); *Goldsmith v. Berryhill*, No. 17-CV-483, 2018 WL 4328832, at *3 (S.D.N.Y. Sept. 11, 2018).

The ALJ also explained that Ogula's conclusions that Plaintiff had an "extreme loss" of functionality and that Plaintiff's mental disorder would require him to be absent from work more than three times per month were "not at all consistent" with Ogula's contemporaneous treatment notes, which indicated that Plaintiff was cooperative, alert, oriented, and attentive during examination sessions. *Id.* at 15; *see also id.* at 320–21. The ALJ's conclusion was supported by substantial evidence, as Plaintiff's other treating medical professionals had repeatedly made similar observations. *See e.g.*, *id.* at 246–47, 275–78. Finally, the ALJ noted that Ogula had evaluated Plaintiff using a checkbox form, *see id.* at 14, 317–22, which the Second Circuit has called "only marginally useful

**VII. Conclusion**

For all the foregoing reasons, the Commissioner's objections to the R&R are

SUSTAINED.  The R&R is NOT ADOPTED.  The Commissioner's motion for judgment on the

pleadings (Dkt. 15) is GRANTED.  The Clerk of Court is respectfully directed to terminate all

open motions and to CLOSE the case.  The Clerk is also respectfully directed to MAIL a copy of

this order to Plaintiff at the address listed in Dkt. 32.

**SO ORDERED.**

**Date:  March 22, 2019**
      **New York, NY**

**VALERIE CAPRONI**
**United States District Judge**

---

for purposes of creating a meaningful and reviewable factual record," *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d
Cir. 2004).  In sum, the ALJ's decision to credit the opinion of Georgiou over that of Ogula was legally proper and
was supported by substantial evidence.